**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **JEFFREY CHARLES BOLES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 2:17-cv-00016** |
| **v.** | ) | **Chief Judge Crenshaw** |
| | ) | **Magistrate Judge Brown** |
| | ) | |
| **NANCY BERRYHILL,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

To: The Honorable Waverly D. Crenshaw, Jr., Chief United States District Judge

### REPORT AND RECOMMENDATION

Pending before the court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 17), to which Defendant Commissioner of Social Security ("Commissioner") filed a response (Docket Entry No. 19). Upon consideration of the parties' filings and the transcript of the administrative record (Docket Entry No. 11),[1] and for the reasons given herein, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for judgment be **DENIED** and that the decision of the Commissioner be **AFFIRMED**.

### I. PROCEDURAL HISTORY

Plaintiff, Jeffrey Charles Boles, filed an application for Disability Insurance Benefits ("DIB") under Title II and an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on October 5, 2009, alleging disability onset as of December 31, 2005, due to hepatitis C, left knee problems, foot problems, bad back, obesity, right arm problems, liver problems,

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

and a broken pelvis. (Tr. 13, 56-59, 164). Plaintiff's claims were denied at the initial level on April 9, 2010, and on reconsideration on July 28, 2010. (Tr. 13, 63, 71, 75). Plaintiff subsequently requested *de novo* review of his case by an administrative law judge ("ALJ"). (Tr. 13, 77). The ALJ heard the case on May 31, 2011, when Plaintiff appeared with counsel and gave testimony. (Tr. 13, 27-51). Testimony was also received by a vocational expert. (Tr. 51-55). At the conclusion of the hearing, the matter was taken under advisement until July 13, 2011, when the ALJ issued a written decision finding Plaintiff not disabled. (Tr. 10, 13-22). On June 14, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering that decision the final decision of the Commissioner. Plaintiff timely appealed to the United States District Court for the Middle District of Tennessee, which on July 22, 2015 remanded the action under sentence four of 42 U.S.C. § 405(g) for further consideration of Plaintiff's obesity and the medical opinion of treating physician Dr. Michael Cox. (Tr. 701-709).

On September 30, 2015, the Appeals Council directed that Plaintiff's subsequently filed applications for DIB and SSI on October 23, 2013 be rendered duplicate and ordered that these claims be consolidated with the remanded action and that a new decision be issued on all of the claims consistent with the District Court's Order. (Tr. 729-731). On September 21, 2016, a different ALJ conducted a video hearing, where Plaintiff, with counsel, and his mother, Martha Boles, appeared and gave testimony. (Tr. 666-693). Testimony was also received by a vocational expert. (Tr. 693-699). At the conclusion of the hearing, the matter was taken under advisement until November 21, 2016, when the ALJ issued a written decision finding Plaintiff not disabled. (Tr. 605-631). That decision contains the following enumerated findings:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2.      The claimant has not engaged insubstantial gainful activity since December 31, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*,and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: morbid obesity, depressive disorder, hepatitis C, partial amputation of right little finger, history of fractured pelvis, spine disorder, right knee disorder, right arm/elbow disorder, lower extremity edema, hypertension, and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can lift and carry, push and pull 10 pounds occasionally and 10 pounds frequently. With normal breaks in an eight-hour day, he can sit for six hours, and stand and/or walk for two hours. The claimant requires a cane to ambulate. The claimant can frequently reach, push, and pull bilaterally; can occasionally operate foot controls; can never climb ladders or scaffolds; can never kneel or crawl; can occasionally climb stairs and ramps; can occasionally crouch; can frequently balance and stoop; should never be around unprotected heights; and can tolerate frequent exposure to moving mechanical parts and operating a motor vehicle. The claimant can understand, remember and perform, simple and one-to-three step detailed tasks; can concentrate and persist for at least two hours at a time on these tasks, but not on higher level tasks; can acceptably relate to co-workers and supervisors on a frequent basis, and with the public on an occasional basis; and can adapt to occasional changes in routine.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on June 30, 1970 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

12. I have essentially complied with the order of the District Court, summarized above, and set out in its entirety at Exhibit 6A.

(Tr. 610, 611, 613, 629, 630, 631).

Plaintiff did not file written exceptions to the ALJ's decision dated November 21, 2016, and the Appeals Council did not assume jurisdiction. Thus, the ALJ's November 21, 2016 decision stands as the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. REVIEW OF THE RECORD

The following summary of the medical record is taken from the ALJ's decision:

Medical records indicate a history of back problems. On January 25, 2014, a CT of the cervical spine showed diffuse spondylosis in an otherwise negative exam. On October 23, 2015, an MRI of the lumbar spine revealed low-grade spondylosis at the L1-2 level with mild disc degeneration and anterior marginal spurring. At this level, there is a minimal posterior annular bulge, but no canal stenosis of foraminal narrowing. There was no focal disc protrusion, significant canal stenosis, or foraminal narrowing. In August 2016, an examination revealed a decreased range of motion of the hips; inability to walk on his toes; difficulty walking on his heels, inability to squat and rise back up; and inability to bend over and touch toes (Exhibits 22F, 27F, 32F, and 33F).

Medical records indicate a history of hypertension. Examinations have revealed non-pitting lower extremity edema. Treating physicians have prescribed appropriate medications. In September 2014, the claimant was admitted for hypertension and

chest pain. A chest x-ray was normal. An EKG had some flipped T waves. A thallium stress test was negative for ischemia. Chemistries were normal. CBC was unremarkable, and troponins were negative x3. Cardiologist Dr. Mike Lenhart noted that his chest pain was noncardiac. In July 2016, an ECG was normal (Exhibits 5F, 14F, 15F, 20F, 21F, 22F, 24F, 25F, 29F, and 32F).

Medical records also indicate a history of joint problems, including the right arm/elbow, right knee, remote fractured pelvis, and remote amputation of the distal phalanx of the right 5th finger. He has undergone cortisone injections in the right elbow and right knee. His treating physician offered an arthrocentesis on his right leg, but the claimant refused (Exhibits 1F and 2F).

Medical records also indicate a history of hepatitis C and elevated LFTs; however, the claimant has not received any treatment or required any hospitalization for this impairment (Exhibits 5F, 20F, 21F, 24F, and 29F).

The claimant was consultatively examined on January 27, 2010 by Dr. Donita Keown. The examination revealed a height of 5'9" and weight estimated between 350 and 400 pounds. He had a blood pressure reading of 170/98. He had a partial amputation of #5 right hand at PIP. He ambulated with and without the piece of wood, which had been fashioned into a cane and showed no difficulty getting up from a chair. Dr. Keown opined lifting up to 100 pounds occasionally and 50 pounds frequently; carrying up to 50 pounds occasionally and 20 pounds frequently; standing for one hour continuously for a total of seven hours in an eight-hour workday; walking for 45 minutes continuously for a total of six hours in an eight-hour workday; sitting for two hours continuously for a total of eight hours in an eight-hour workday; occasional climbing of stairs and ramps; occasional climbing of ladders, ropes, or scaffolds; occasional kneeling, crouching, and crawling; and frequent stooping (Exhibit 6F).

The claimant was also consultatively examined on April 9, 2016 by Dr. William Robinson, II. Dr. Robinson indicated that the claimant first has hepatitis C with a normal abdominal exam and few symptoms other than nausea. He has right knee problems, where he has some chronic findings with some crepitance. He has problems with his left foot with some swelling here in the ankle but no heat or inflammation. He has chronic back pain with a history of back pain since 2010 for which he is taking medication on a regular basis. His exam shows some restrictions of lumbar and cervical ranges of motion but a negative straight leg raising and normal reflexes and sensation. He has right arm problems. By this, likely, he is meaning problem with his right arm where he has a scar and he has had surgery but has good ranges of motion, good strength, and good fine motor control. This scar is due to an old injury and surgery some years ago but relatively few chronic problems from it. He has liver problems related to hepatitis C as above. He has a history of broken pelvis, perhaps making his backache somewhat worse. Restrictions due to obesity, back pain, right

knee and left ankle pain. Dr. Robinson essentially opined lift and carry 21 to 50 pounds occasionally and 11 to 20 pounds frequently; can sit for eight hours, stand for seven hours, and walk for six hours; bilaterally can frequently reach, push, and pull; can occasionally use operation of foot controls; can never climb ladders or scaffolds; can never kneel or crawl; can occasionally climb stairs and ramps; can occasionally crouch; can frequently balance and stoop; should never be around unprotected heights; and can tolerate frequent exposure to moving mechanical parts and operating a motor vehicle (Exhibit 28F).

Medical records also indicate that the claimant is obese. He has had a weight around 368 pounds, height of 5'9", and a body mass index ("BMI") of 54.3 (Exhibit 32F). On January 6, 2016, however, Dr. Cox wrote a letter, stating that the claimant's medical problems included heart disease, essential hypertension and lower back pain. He did not list obesity as a medical problem at this time (Exhibit 30F/36). Later, on April 9, 2016, when the claimant was examined by Dr. Robinson II, the claimant's weight had decreased to 268 pounds (Exhibit 28F/3). A BMI of 30 or above is considered obese. Therefore, in accordance with SSR 02-lp, the undersigned has considered the impact of obesity on function, including the claimant's ability to perform routine movement and necessary physical activity within a work environment. The undersigned finds that the claimant's obesity, combined with his severe impairments, does limit his exertional and nonexertional activities such that the claimant is limited to the residual functional capacity stated above.

As for the claimant's mental impairments, besides substance abuse treatment, the claimant did not start treatment with appropriate medications, therapy, and case management services until 2011. Treating practitioners have diagnosed major depressive disorder, single episode, severe without psychotic features; generalized anxiety disorder; alcohol dependence in remission; and opioid dependence in remission. They have also indicated global assessment of functioning scores of 45 to 50, indicating serious symptoms (Exhibits 15F, 16F, 23F, 25F, 26F, 29F, 31F, and 32F).

On June 14, 2010, a consultative exam was performed . . . by examiner Mark Loftis, MSPE, which indicated the claimant's gait and posture as normal, and his fine and gross motor skills within the normal range. Mr. Loftis noted his thought content and processes were logical and coherent, he could spell "world" backwards and did serial threes backwards four times. He is not currently under any psychiatric care or taking any medication for depression or anxiety. Mr. Boles reported feeling-partly depressed-and he prefers to be at home. The assessment indicated the claimant has completed four alcohol and drug treatment programs in the past, and is currently being treated for narcotic addition, which he reports in remission since 2006. Mr. Loftis opined mild limitations in understanding and remembering, with simple repetitive tasks not likely impaired; mild limitations in concentration, persistence and ability to maintain a competitive pace; moderate limitations in social interactions; and

moderate limitations in ability to adapt to changes in most work situations (Exhibit 9F).

(Tr. 615-617).

## III. CONCLUSIONS OF LAW

### A. Standard of Review

Review of the Commissioner's disability decision is narrowly limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the right legal standards in reaching the decision. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). "Substantial evidence requires 'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the Commissioner's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387 (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton*, 246 F.3d at 773 (citations omitted); *Ulman v.*

*Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.'") (citation omitted).  However, where an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller,* 811 F.3d at 833 (citation and internal quotation marks omitted).

## B. Administrative Proceedings

The claimant has the ultimate burden of establishing his entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("[T]he claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work.").  The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The Commissioner applies a five-step inquiry to determine whether an individual is disabled within the meaning of the Social Security Act, as described by the Sixth Circuit as follows:

> (1) a claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings; (2) a claimant who does not have a severe impairment will not be found to be disabled; (3) a finding of disability will be made without consideration of vocational factors if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations.

Claimants with lesser impairments proceed to step four; (4) a claimant who can perform work that he has done in the past will not be found to be disabled; and (5) if a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations his impairments cause and the fact that he cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . .'" *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 628 (6th Cir. 2016) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

The Social Security Administration can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). The grids otherwise only function as a guide to the disability determination. *Wright*, 321 F.3d at 615-16; *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert ("VE") testimony. *Anderson*, 406 F. App'x at 35; *see Wright*, 321 F.3d at 616 (citing SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the Commissioner must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B), (5)(B); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Claims of Error

**1. The ALJ erred in finding that Dr. Cox's opinion was not fully supportable with the record as a whole.**

Plaintiff argues that Dr. Cox's opinion is sufficiently supported by medical findings and that the ALJ erred in rejecting it. Plaintiff asserts that Dr. Cox continuously diagnosed Plaintiff with low back pain. (Docket Entry No. 18, at 12-13). Specifically, Plaintiff only argues that "[i]n October 2015, [Plaintiff] underwent an MRI of the lumbar spine that showed low grade spondylosis at the L1-2 level with mild disc degeneration and anterior marginal spurring and minimal posterior annular bulge." *Id*. at 13. Defendant contends that the ALJ properly weighed the differing medical opinions relating to Plaintiff's physical complaints and that the ALJ thoroughly and appropriately considered Dr. Cox's opinion in assessing Plaintiff's RFC. (Docket Entry No. 19, at 5-6).[2]

Social Security regulations address three classifications of medical sources: treating sources; examining but non-treating sources; and non-examining sources. 20 C.F.R. §§ 404. 1527, 416.927; 20 C.F.R. §§ 404.1502, 416.902.[3, 4] A treating source has a history of medical treatment and an

---

[2]Plaintiff does not challenge the ALJ's evaluation of his mental impairments, nor argue that the ALJ should have assessed different or additional RFC limitations to account for any difficulties attributable to any mental symptoms. Therefore, the Magistrate Judge will only address the evidence and opinions relating to Plaintiff's physical complaints.

[3]The Act and implementing regulations regarding DIB (contained in Title II of the Act and 20 C.F.R. Part 404 of the regulations) and SSI (contained in Title XVI of the Act and 20 C.F.R. Part 416 of the regulations) are substantially identical. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)

ongoing treatment relationship with the plaintiff consistent with accepted medical practice. *Id.* §§ 404.1527, 416.927. An examining non-treating source has examined the plaintiff, but does not have an ongoing treatment relationship. *Id.* A non-examining source is a physician, psychologist, or other acceptable medical source who has not examined the plaintiff, but provides a medical or other opinion based upon medical and treatment records. *Id.* The opinion of an examining non-treating source is given greater weight than that from a non-examining source, and an opinion from a treating source is afforded greater weight than an examining non-treating source. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). "[W]hen the physician is a specialist with respect to the medical condition at issue," the specialist's "opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527([c])(5)).

"A treating physician's opinion is normally entitled to substantial deference, but the ALJ is not bound by that opinion. The treating physician's opinion must be supported by sufficient medical

---

(noting that the Title II and the Title XVI definition of "disability" is "verbatim the same" and explaining that "[f]or simplicity sake, we will refer only to the II provisions, but our analysis applies equally to Title XVI."). The Magistrate cites to the regulations interchangeably.

[4]On January 18, 2017, the Social Security Agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017). *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules became effective March 27, 2017, 20 C.F.R. §§ 404.1527 & 416.927, setting forth the rules for evaluating opinion evidence, both medical and nonmedical, for claims filed before that date. Thus, the Magistrate Judge applies the rules that were in effect at the time of the ALJ's decision. Also, "[i]t bears noting that the current iterations of §§ 404.1527 & 416.927, while purporting to apply to claims filed before March 27, 2017, are not identical in language to the version in effect at the time of the ALJ's decision. For the sake of consistency, the court continues to cite the language from the former regulation sections that were in effect at the time of the ALJ's decision." *Belko v. Berryhill*, No. 1:16-CV-2637, 2017 WL 5197241, at *9 (N.D. Ohio Oct. 23, 2017), *report and recommendation adopted sub nom. Belko v. Comm'r of Soc. Sec.*, No. 1:16CV2637, 2017 WL 5178280 (N.D. Ohio Nov. 8, 2017).

data." *Jones*, 336 F.3d at 477 (citation omitted). Thus, "[t]reating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). "If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Jones*, 336 F.3d at 477. The regulations provide that an ALJ must provide "good reasons" for discounting the weight of a treating source opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley*, 581 F.3d at 406-07 (quoting SSR 96-2p, 1996 WL 374188, at *5). If the ALJ does not accord the treating physician's opinion "controlling weight," then the ALJ must weigh the opinion based on a number of factors in 20 C.F.R. §§ 404.1527(c), 416.927(c) (2016), including: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id.* at 406. However, "[t]he ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017).

The ALJ considered Dr. Cox's May 23, 2011, medical source statement ("MSS") in which Dr. Cox opined that Plaintiff could lift and carry ten pounds occasionally and less than ten pounds

frequently; stand and/or walk for less than two hours in an eight-hour workday; sit for less than about

six hours in an eight-hour workday; needed to alternate between sitting and standing; had pain severe

enough to often interfere with attention and concentration; could tolerate moderate stress; needed to

take unscheduled breaks every thirty minutes as needed; would be absent from work more than four

days a month; and could never climb, balance, kneel, crouch, or crawl. (Tr. 622, 482-85). The ALJ

gave some weight to Dr. Cox's opinion. (Tr. 622). The ALJ also considered Dr. Cox's August 25,

2016 opinion, which was essentially the same as his May 23, 2011 opinion. (Tr. 628, 1261, 1267-

70). Thus, the ALJ gave this opinion little weight for the same reasons in assessing Dr. Cox's May

23, 2011 opinion. (Tr. 628).[5]

In weighing Dr. Cox's opinion based on the factors set forth in 20 C.F.R. §§ 404.1527(c),

416.927(c), the ALJ noted that as to the specialization of the treating source, Dr. Cox appeared to be

a medical doctor, and as to the length of the treatment relationship and the frequency of examination,

there were four messages in 2007 and 2008, but no treatment notes. (Tr. 303, 622). The first

treatment notes in the medical record with Dr. Cox were from May 17, 2011, six days before Dr.

Cox's MSS. (Tr. 622, 486-87). As to the nature and extent of the treatment relationship, the ALJ

noted that Dr. Cox appeared to be a primary care treatment provider in Plaintiff's first visit with Dr.

Cox prior to the rendering of the opinion. (Tr. 486-87, 622-23).

As to the supportability and consistency of Dr. Cox's opinion with the record as a whole, the

ALJ provided a thorough analysis of the medical record in concluding that Dr. Cox's opinion was

---

[5]The Magistrate Judge notes that the ALJ afforded "some" and "little" weight to various portions of Dr. Cox's May 23, 2011 opinion (Tr. 622, 624) and "little" weight to Dr. Cox's August 25, 2016 opinion (Tr. 628). Whatever the distinction between "little" and "some," for the reasons discussed *infra*, the Magistrate Judge concludes that the ALJ properly considered Dr. Cox's opinions and provided good reasons for discounting the weight of these opinions.

not fully supportable. (Tr. 623-29). The ALJ considered the medical findings of Dr. Cox's May 17, 2011 examination of Plaintiff, on which Dr. Cox's May 23, 2011 opinion was based. The ALJ noted that Plaintiff's examination results were "relatively normal and benign." (Tr. 624). Plaintiff's physical examination showed that he weighed 376 pounds; that he was in no acute medical distress; that he required no orthopedic appliances for ambulation; that his head, ears, eyes, nose, throat, neck, chest, lungs, cardiac system, abdomen, extremities, pulses, and neurological system were normal; and that Plaintiff's joints were free of any redness, warmth, synovitis or effusion. (Tr. 486, 624). Plaintiff's range of motion of all joints was normal, except for the lumbar spine, which was "able to flex activity 85 degrees, extend 5 degrees, left lateral flex 10 degrees and right lateral flex 10 degrees." *Id.* Plaintiff had difficulty turning his feet inward, but had normal external rotation, Plaintiff could not internally rotate at all, and Plaintiff's left foot was somewhat swollen and appeared to have a fallen arch. *Id*. Dr. Cox's diagnosis impression was: (1) chronic lower back pain; (2) morbid obesity; (3) left foot pain that may be related to a fallen arch; (4) hepatitis C; (5) essential hypertension; (6) history of drug addiction currently on Methadone therapy; and (7) previous right arm surgery from a motor vehicle accident ("MVA") in 1994. (Tr. 487, 624).

In explaining the deviation from portions of Dr. Cox's opinion in determining Plaintiff's RFC, the ALJ noted that "Dr. Cox used a check the box, short answer format, with no narrative showing treatment visit complaints, examination results, or radiological testing to explain and substantiate his opinion." (Tr. 624). The ALJ also noted that, although there were four messages in 2007 and 2008,there were no treatment notes during that period and no treatment visits with Plaintiff except for the one visit that was six days before Dr. Cox's opinion, which was based upon examination results that were relatively normal and benign. (Tr. 300-03, 624). The ALJ further noted that

subsequent testing was also no more than mild in outcome, citing a January 2014 computed tomography ("CT") scan of the brain that was normal; a CT scan of the cervical spine that showed diffuse spondylosis[6] in an otherwise negative examination; a September 28, 2014 chest x-ray that was negative; and a September 30, 2014 Lexiscan Stress Test ("LST") that revealed no scintigraphic evidence of left ventricular myocardial scar or stress induced ischemia, an estimated left ventricle ejection fraction ("LVEF") of 62% and cardiomegaly.[7] (Tr. 625, 974-75, 1064-65, 1067, 1074-76). Dr. Cox reviewed the LST and determined that the test was negative for ischemia. (Tr. 625, 1067). An October 2015 magnetic resonance imaging ("MRI") scan of the lumbar spine revealed low-grade spondylosis at L1-2 level with mild disc degeneration and anterior marginal spurring, and minimal posterior annular bulge; however, there was no focal disc protrusion, significant canal stenosis, or foraminal narrowing. (Tr. 625, 1163-64). The ALJ noted that in a January 6, 2016 letter, Dr. Cox listed Plaintiff's medical problems as heart disease, essential hypertension and lower back pain, but did not list obesity. (Tr. 625, 1220). Thus, the ALJ properly concluded that the objective medical evidence did not fully support Dr. Cox's opinion.

The ALJ further articulated:

In his treatment sessions at Private Clinic North from 2013, through the middle of 2015, the claimant conveyed a host of activities, including trout fishing, turkey hunting, quail hunting, deer hunting, remodeling his parents' basement and helping his mother and father on the farm every day, that are inconsistent with the severity of the limitations given by Dr. Cox in his opinion[.]

---

[6]Spondylosis is ankylosis (the immobility and consolidation of a joint due to disease, injury, or surgical procedure) of a vertebral joint or degenerative spinal changes due to osteoarthritis. *Dorland's Illustrated Medical Dictionary* 94, 1754 (32nd ed. 2012).

[7]Cardiomegaly is the abnormal enlargement of the heart from either hypertrophy or dilation. *Dorland's* at 294.

(Tr. 625). During this period of time, Plaintiff also consistently reported "doing fine." (Tr. 625-28).

A sampling of the sessions at Private Clinic North cited in the ALJ's decision are as follows:

> On March 20, 2013, the claimant said: "I had a good fishing trip with my friend and my Aunt seemed to enjoy taking care of my parents. I am doing fine health wise, not losing as much weight, since I did not work much on my diet during the fishing trip." (Exhibit 26F/43).

> On April 13, 2013, the claimant said: "I am doing fine. I am trying to still lose a little weight. I am going turkey hunting in Kentucky for a week next week. We stay out in the woods in a blind and call them in and shoot them with a 12 gauge. I enjoy being outdoors." (Exhibit 26F/42).

> . . . .

> On June 28, 2013, the claimant said: "I am doing good. I have been working on my weight loss. I have lost weight doing the Atkins Diet. It is working. I have lost 30 pounds. . . ." (Exhibit 26F/40).

> . . . .

> On September 28, 2013, the claimant said: "I am doing ok. I am doing some scouting for deer hunting season that starts up." (Exhibit 26F/37).

> . . . .

> On January 18, 2014, the claimant said: "I am currently working on making a man cave in my mother's den. I am moving out some old junk and making me a room downstairs. I am running a cable down there so I can watch the satellite TV... Yes hunting season is about over for me this year. I got to keep the freezer full this summer. I grind up most of mine up into hamburgers or sausage. I am feeling ok. I have no problems. Things are all going my way for a change." (Exhibit 26F/27).

> On February 14, 2014, the claimant said: "I like to go quail hunting when it snows, because they are easy to spot. Sometimes you can shoot them with one shot. It makes for a good meal ...I'm still working on my 'man cave' den downstairs."(Exhibit 26F/26).

> . . . .

> On April 5, 2014, the claimant said: "I am thinking about going trout fishing this weekend. I am still helping my mom and dad on the farm. I am working on my room downstairs. It is going to be nice when I am done remodeling it." (Exhibit 26F/24).

On May 3, 2014, the claimant said: "My family is having a big yard sale. I bought a motorcycle a while back for $100 and fixed the gas mixture and resold it for $500. It's a return on investment. I am still working on my basement so I can finish my man cave den.  I went to the County Fair last week in my hometown.  It was really fun. I am doing good, no changes."(Exhibit 26F/22).

On June 17, 2014, the claimant said: "I went fishing and caught a few. I have been doing fine. I have no complaints. We have been cleaning out my grandmother's place since she died. We are going through her things." (Exhibit 26F/21).

On July 12, 2014,the claimant said, I am still fishing, and I am still working on my basement at my mom and dad's house, making into my apartment." (Exhibit 26F/20).

On August 9, 2014, the claimant said: "I am doing good. We have been doing some canning of farm vegetables this week.  I have been working on my basement apartment." (Exhibit 26F/19).

. . . .

On November 1, 2014,the claimant said: "I am feeling much better. I have lost 60 pounds...I am trying to exercise and lose weight ...I am planning on doing some Deer hunting when gun season comes around here on the 21st of the month. I am still working on my basement a little at a time to get me a nice den set up." (Exhibit  26F/11).

On December 13, 2014, the claimant said: "I try to get out and hunt and walk ...I am planning on being home with my family for Christmas. We may do some hunting." (Exhibit 26F/10).

. . . .

On March 7, 2015,the claimant said: "My trip to KY went well. We caught a bunch of fish. I enjoyed the trip... I feel fine." (Exhibit 26F/5).

On May 2, 2015, the claimant said: "I have been doing good. I did some fishing." (Exhibit 26F/4).

. . . .

On June 25, 2016, the claimant stated, "I am planning on going to the lake with my dad and some relatives from Ohio over the 4th of July." (Exhibit 31F/ 1).

(Tr. 625-28, 1096-97, 1102-03, 1111-14, 1116, 1118-19, 1129, 1132,1134-35, 1225).

The ALJ properly considered Plaintiff's activities in concluding that Plaintiff's self-reported activities were inconsistent with the severity of limitations in Dr. Cox's opinion. *See Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 426-27 (6th Cir. 2014) (affirming Commissioner where ALJ accorded little weight to plaintiff's treating physicians' opinions that were inconsistent with the weight of the medical evidence of record and plaintiff's activities of daily living); *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("[T]he ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."); *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 921 (6th Cir. 1987) (ALJ properly assessed plaintiff's claims of debilitating physical impairments and severe pain by considering plaintiff's daily activities such as plaintiff running errands to various shops and stores to pick up groceries and other items and that he fished weekly in the summer and hunted four hours a day for three days during deer hunting season).

Further, although the ALJ concluded that the record failed to support all of the limitations opined by Dr. Cox, the ALJ did incorporate some of Dr. Cox's restrictions into Plaintiff's RFC, such as Plaintiff's ability to lift and carry up to ten pounds and tolerate moderate stress. (Tr. 623, 482-83). *See Warner*, 375 F.3d at 391 ("[W]e find it significant that the administrative law judge did not reject wholesale the conclusions of Dr. Sonke and indeed incorporated [some of] Dr. Sonke's conclusions[.]"). Also, although Dr. Cox did not opine, nor did any other doctor, that Plaintiff needed to use a cane for ambulation, the ALJ credited Plaintiff's testimony that Dr. Cox prescribed him a

cane and, viewing Plaintiff's testimony in the most favorable light, included a cane for ambulation as part of Plaintiff's RFC. (Tr. 482-85, 623, 684-85, 1261-62, 12676-70).

As to Dr. Cox's opinion that Plaintiff needed to alternate between sitting and standing, the ALJ stated:

> "[N]o such limitation was given by the consultative examiner, Donita Keown, M.D. in her examination of the claimant (6F), nor by consultative examiner William Robinson, II, M.D. in his examination of the claimant (28F), nor by the state agency doctors in their review of the medical evidence of record (8F, 11F, 12F).
>
> Dr. Cox's opinion that the claimant can sit for less than six hours and stand and/or walk for less than two hours is too imprecise to be of any value. Under this language the claimant's ability to sit could be anywhere from one minute to five [hours] and fifty-nine [minutes].[8] The same is true of standing less than two hours. This could mean standing anywhere from one minute to one hour and fifty-nine minutes. I have provided in the residual functional capacity that the claimant can sit for six hours and stand and/or walk for two hours, which is close to the maximum sitting, standing and walking provided by Dr. Cox.

(Tr. 370-79, 394-401, 411, 412, 615-16, 623, 628-29, 1165-77).

The ALJ further stated:

> Regarding Dr. Cox's opinion that the claimant can never climb, balance, kneel, crouch, and crawl, I have provided in the residual functional capacity that the claimant can never climb ladders or scaffolds; can never kneel or crawl; can occasionally climb stairs and ramps; can occasionally crouch; can frequently balance and stoop, which is consistent with the consultative opinion of William Robinson, II MD at Exhibit 28F, and is more restrictive than the consultative opinion of Donita Keown, M.D. at Exhibit 6F, and more restrictive than the state agency opinion of Glenn James, M.D. at Exhibit 8F.
>
> I give little weight to Dr. Cox's opinion that the claimant needs take unscheduled breaks every 30 minutes as needed. It is too vague as to how many breaks this would be. It could range from the regularly scheduled breaks during the day to more than

---

[8]The Magistrate Judge notes an obvious scrivener's error in the ALJ's decision where the ALJ wrote "minutes" as opposed to "hours" and "seconds" as opposed to "minutes." From the ALJ's opinion and a review of the record, it is clear that the ALJ simply made a drafting error. Such error is harmless.

that. I also give little weight to Dr. Cox's opinion that the claimant would be absent from work for four days per month. For both of these limitations, Dr. Cox offers no substantiation.

(Tr. 370-79, 394-401, 615-16, 624, 1165-77).

It is the function of the ALJ to resolve the conflicts between the medical opinions. *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins. The fact that Justice now disagrees with the ALJ's decision does not mean that the decision is unsupported by substantial evidence."). The ALJ may rely on opinions from consulting doctors. *See Brown v. Comm'r of Soc. Sec.*, No. 14-1626, 2015 WL 163059, at *1 (6th Cir. Jan. 13, 2015) ("The ALJ gave 'some weight' to the opinions of three consulting physicians…"); *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013). "An administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records." *Dyer*, 568 F. App'x at 428; *see also Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence."). "Generally, the more consistent an opinion is with the record as a whole, the more weight [the Commissioner] will give to that opinion." 20 C.F.R. § 404.1527(c)(4).

Here, the record reflects that the ALJ properly considered Dr. Cox's opinion along with the medical record as a whole, properly gave some weight to Dr. Cox's opinion, properly concluded that Dr. Cox's opinion was not fully supportable and was inconsistent with other evidence in the record, and properly provided good reasons for not giving Dr. Cox's opinion controlling weight. Accordingly, Plaintiff's claim is without merit.

## 2. The ALJ erred in evaluating Plaintiff's obesity.

Plaintiff argues that the ALJ did not consider obesity and its impact on his ability to sustain function over time or the fatigue caused by obesity that may affect an individual's physical and mental ability to sustain work activity. (Docket Entry No. 18, at 14). Plaintiff argues that the ALJ rejected Dr. Cox's opinion that Plaintiff would need to take breaks for five minutes every hour, that he would need to alternate sitting and standing every thirty minutes, and that he would miss more than four days of work per month. *Id.*

Social Security Ruling 02-1p describes how to consider a claimant's obesity in determining eligibility for Social Security benefits. SSR 02-1p provides, in part, that:

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. . . . [O]ur RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

2002 WL 34686281, at *6 (S.S.A. Sept. 12, 2002).

Yet, "Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006). The Sixth Circuit has held that an "ALJ does not need to make specific mention of obesity if [the ALJ] credits an expert's report that considers obesity." *Id.* at 412. "A social security claimant bears the evidentiary burden of establishing that [his] obesity imposes

functional limitations." *Boles v. Colvin*, No. 2:12-CV-00079, 2015 WL 4506174, at *2 (M.D. Tenn. July 23, 2015) (citing *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004)).

The ALJ included morbid obesity as one of Plaintiff's severe medical impairments. (Tr. 611). The ALJ noted that at the hearing Plaintiff testified that he was 5'11 and weighed 390 pounds. (Tr. 614, 643). The ALJ noted that Dr. Keown's consultative examination revealed a height of 5'9 and an estimated weight between 350 to 400 pounds; that in April 9, 2016 Dr. Robinson noted restrictions due to obesity; that medical records indicated that Plaintiff was obese and that he had a weight around 368 pounds, height of 5'9, and a body mass index ("BMI") of 54.3; that "[o]n January 6, 2016, . . . Dr. Cox wrote a letter, stating that the claimant's medical problems included heart disease, essential hypertension and lower back pain," but that "[h]e did not list obesity as a medical problem"; and that a "BMI of 30 or above is considered obese." (Tr. 371, 615-16, 1167-68, 1220, 1250). The ALJ then specifically stated:

> [I]n accordance with SSR 02-1p, the undersigned has considered the impact of obesity on function, including the claimant's ability to perform routine movement and necessary physical activity within a work environment. The undersigned finds that the claimant's obesity, combined with his severe impairments, does limit his exertional and nonexertional activities such that the claimant is limited to the residual functional capacity stated above.

(Tr. 616).

Based upon this record, the Magistrate Judge concludes that the ALJ properly considered Plaintiff's obesity in determining Plaintiff's RFC. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) ("Given the AL''s discussion of Coldiron's obesity throughout his findings of fact and the ALJ's use of RFCs from physicians who explicitly considered Coldiron's obesity, we find that the ALJ adequately accounted for the effect that obesity has on Coldiron's ability to perform sedentary work.").

Plaintiff argues that the ALJ improperly relied on Dr. Robinson's April 2016 consultative report that listed Plaintiff's weight as 268 pounds, although his BMI was listed as 54.4, which would translate to a weight of 368 pounds and would be more consistent with other recorded weights at that time. (Docket Entry No. 18, at 13; Tr. 616, 1167). However, even if Dr. Robinson incorrectly recorded Plaintiff's weight in his April 2016 report, the ALJ specifically considered Plaintiff's morbid obesity as one of his severe medical impairments, and specifically found that, when combined with his severe impairments, his obesity limited his exertional and nonexertional activities. (Tr. 611, 616). Accordingly, the Magistrate Judge finds this claim is without merit.

### 3. The ALJ erred in failing to find Plaintiff needed to alternate standing and sitting.

Plaintiff argues that the ALJ erred in failing to find Plaintiff needed to alternate standing and sitting based on Plaintiff's back and hip pain combined with his obesity. (Docket Entry No. 18, at 14-15). As previously discussed, the ALJ properly considered Dr. Cox's opinion regarding Plaintiff alternating between sitting and standing, but found that this restriction was inconsistent with, and unsupported by, the evidence in the whole record. (Tr. 370-79, 394-401, 411, 412, 615-16, 623, 628-29, 1165-77). Accordingly, this claim is without merit.

### 4. The VE did not identify a significant number of jobs that existed in the national economy that Plaintiff can perform.

Plaintiff argues that the ALJ erred in relying upon the VE's testimony because the number of available jobs in the three occupations that the VE identified--a combined total of 42,415 in the United States--does not constitute a "significant number" of jobs available in the national economy. (Docket Entry No. 18, at 15). The VE testified that given Plaintiff's age, work history, education, and RFC Plaintiff could perform the requirements of certain representative occupations such as table worker, fabrication (DOT No. 739.687-182) with 12,300 jobs available in the United States;

surveillance system operator/monitor (DOT No. 379.367-010) with 16,165 jobs available in the United States; and hand bander (DOT No. 920.687-030) with 13,950 available jobs in the United States. (Tr. 630, 694-96). The Sixth Circuit has recognized that "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.'" *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016); *See, e.g., Dawson v. Comm'r of Soc. Sec.*, 468 F. App'x 510, 514 (6th Cir. 2012) (19,000 jobs constituted a significant number); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009) (2000 jobs constituted a significant number).

Plaintiff also argues that "it is not clear that the job of surveillance system operator/monitor can be performed with the restrictions given by the ALJ," because the Dictionary of Occupational Titles ("DOT") describes that job as requiring a reasoning level of 3[9], but the ALJ found that Plaintiff was capable of performing simple and one-to-three step detailed tasks. (Docket Entry No. 18, at 15; Tr. 613, 695).

As to the use of VE evidence, SSR 00-4p provides, in relevant part, the following:

Occupational evidence provided by a VE or [Vocational Specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

---

[9]Reasoning level 3 is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." Surveillance-system Monitor, DICOT 379.367-010.

Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

. . . .

Reasonable explanations for such conflicts, which may provide a basis for relying on the evidence from the VE or VS, rather than the DOT information, include, but are not limited to the following:

Evidence from VEs or VSs can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.

The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

. . . .

When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

2000 WL 1898704, at *2-4 (S.S.A. December 4, 2000).

"As an initial matter, neither the ALJ nor the VE is required to follow the DOT." *Beinlich*

*v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) (citing *Wright v. Massanari*, 321 F.3d

611, 616 (6th Cir. 2003)).  An ALJ's duty is satisfied "if he or she asks the VE whether his or her testimony is consistent with the DOT."  *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013) (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir.2006)); *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (An ALJ complies with SSR 00-4p when the ALJ asks the VE if there are any discrepancies between the ALJ's opinions and the DOT standards even if the VE did not disclose a conflict.).  "[T]he ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p.  This obligation falls to the plaintiff's counsel, who ha[s] the opportunity to cross-examine the VE and bring out any conflicts with the DOT."  *Beinlich*, 345 F. App'x at 168 (citation omitted).  A plaintiff's counsel's failure to do so is not grounds for relief.  *Id*. at 168-69.

In *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434 (6th Cir. 2011), the Sixth Circuit stated that the Commissioner accurately pointed out that the plaintiff cited "'no authority for the proposition that jobs requiring reasoning levels two or three are inconsistent as a matter of law with a limitation to simple work.'" *Id.* at 446.  The Court held that "[b]ecause neither the Commissioner nor the VE has an obligation to employ the DOT, and there is no precedent that requires the Commissioner to align DOT 'reasoning levels' with RFC classifications," the plaintiff's argument was without merit. *Id*.; *but see Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 436 (6th Cir. 2016) (The Sixth Circuit has "declined to recognize a *per se* inconsistency between jobs requiring reasoning levels two or three and a limitation to simple work," but "[left] open the possibility that an ALJ might reversibly err by failing to inquire about or resolve a conflict between the DOT reasoning levels and a simple-tasks limitation.").

Here, the VE testified that Plaintiff could perform the job of surveillance system operator/monitor based upon Plaintiffs age, work history, education, and RFC, which included that Plaintiff could understand, remember, perform simple and one-to-three step detailed tasks, and concentrate and persist for at least two hours at a time on such tasks. (Tr. 613, 630-31, 694-96, 698-99). When asked by the ALJ if the VE's testimony was consistent with the DOT, the VE stated that it was and that for the data that required vocational analysis the VE relied on her experience in placement of thirty years to address those issues. (Tr. 631, 698-99). The VE's response to the ALJ's hypothetical question constitutes substantial evidence for finding Plaintiff not disabled. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'") (citation omitted); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010). Further, Plaintiff's counsel at the hearing did not question the VE regarding any inconsistencies between the VE's testimony and the DOT. "The ALJ is not required to affirmatively 'conduct an independent investigation into the testimony of witnesses to determine if they are correct.'" *Johnson*, 535 F. App'x at 508 (citation omitted).

Moreover, even if the ALJ's RFC finding would eliminate the job of surveillance system operator/monitor, the jobs of table worker and hand bander---a combined total of 26,250--would remain available in significant numbers in the national economy to Plaintiff. *See Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 468 (6th Cir. 2017) ("Staymate does not argue that there is a conflict with the bottling line attendant position. The ALJ could have reasonably found that Staymate could perform this position, had he discounted the first two.").

Accordingly, for these reasons, Plaintiff's claims are without merit.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 17) be **DENIED**, and the Commissioner's decision be **AFFIRMED**. The parties have fourteen (14) days of being served with a copy of this Report and Recommendation to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this 28th day of February, 2018.


/s/    Joe B. Brown          
JOE B. BROWN
United States Magistrate Judge